## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| PETER HLAVKA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO: 3:22-CV-4372 |
| v. | ) | |
| | ) | |
| | ) | **COMPLAINT AND DEMAND FOR** |
| 3M COMPANY, f/k/a Minnesota | ) | **JURY TRIAL** |
| Mining and Manufacturing Company | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Plaintiff, Peter Hlavka (hereinafter "Plaintiff"), by and through his attorney for this Complaint against 3M  (hereinafter "Defendant") alleges upon information and belief, as follows:

## NATURE OF THE ACTION

1.      Plaintiff, Peter Hlavka ("Plaintiff"), brings this action for damages arising from products liability and/or the intentional, knowing, reckless, and/or negligent acts and/or omissions of Defendant in connection with the contamination of Plaintiff's drinking water supply with toxic per- and/or polyflouroalkyl substances such as Perfluorooctanoic Acid ("PFOA"), Perfluorooctanesulfonic acid ("PFOS"), Perfluorononanoic acid ("PFNA"), and Perfluorohexanesulfonic acid ("PFHxS"), Perfluorobutanesulfonic acid (PFBS) and other PFAS chemicals (collectively "PFAS"), and/or their precursors or their derivatives.

2.      Defendant, 3M Company (hereinafter "3M") marketed, developed, manufactured, distributed, released, trained users of, produced instructional materials for, sold and/or otherwise handled and/or used PFAS containing products in such a way as to result in the contamination of Plaintiff's public drinking water supplies.

3.      Through this action, Plaintiff seeks compensatory damages, economic damages, punitive damages, costs incurred and to be incurred by the Plaintiff, and any other damages that the Court or jury may deem appropriate for bodily injury arising from the intentional, malicious, knowing, reckless and/or negligent acts and/or omissions of Defendant in connection with the Plaintiff and PFAS chemicals, and their precursors, to which the Plaintiff was exposed.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because complete diversity exists between the Plaintiff and Defendant and the amount in controversy exceeds $75,000.00.

5.      United States District Court for the District of New Jersey has personal jurisdiction over the Defendant because at all times relevant to this lawsuit, the Defendant manufactured, designed, marketed, distributed, released, promoted and/or otherwise sold PFAS-containing products to various locations, such that the Defendant knew or should have known that said products would be delivered to areas in the state of New Jersey and that the aforementioned chemicals would seep into the ground and/or contaminate water sources used for public consumption.

6.      Therefore, the exercise of jurisdiction over the Defendant by the United States District Court for the District of New Jersey of does not offend traditional notions of fair play and substantial justice.

**PARTIES**

**PLAINTIFF**

7.      Plaintiff, Peter Hlavka, is a citizen of the United States of America, and a current resident of South Plainfield, New Jersey.

8.      Plaintiff, Peter Hlavka, was born on March 18, 1993.

9.      Plaintiff was exposed to Defendant's PFAS chemicals by drinking water contaminated by PFAS chemicals and/or its derivatives while living in South Plainfield, New Jersey.

10.    Upon information and belief, the city of South Plainfield purchases water from Middlesex Water Company.

11.    Middlesex Water Company is a public water system within Middlesex County, New Jersey that serves over 60,000 residential and commercial customers.

12.    Plaintiff drank water daily from Middlesex Water Company's South Plainfield treatment facility from 1993 to November 2019.

13.    Middlesex Water Company's water was, and continues to be contaminated by PFAS chemicals as a result of 3M Company's intentional, knowing, reckless and/or negligent acts and/or omissions.

14.    As a result of drinking water contaminated with PFAS manufactured by the Defendant, Plaintiff was diagnosed with testicular cancer, which has caused Plaintiff to undergo an orchiectomy, chemotherapy, and to suffer severe personal injuries, pain, and emotional distress, including the consistent fear of his cancer recurring.

15.    As a result of Plaintiff's testicular cancer and required treatment, Plaintiff incurred significant medical expenses. Plaintiff also lost wages as he was unable to work during his treatment and recovery.

16.    The injuries, pain, suffering, and emotional distress were proximately caused by Defendant's products which contain the aforementioned PFAS chemicals or their precursor chemicals.

**DEFENDANT**

17.    **Defendant 3M Company (f/k/a/ Minnesota Mining and Manufacturing Company) ("3M")** is a Delaware Corporation and conducts business throughout the United States, with its principal place of business located at 3M Center, St. Paul Minnesota 55144.

4

18.     Any and all references to a Defendant in this Complaint include any predecessors, successors, parents, subsidiaries, affiliates and divisions of the named Defendant.

19.     When reference is made in this Complaint to any act or omission of the Defendant, it shall be deemed that the officers, directors, agents, employees, or representatives of the defendant committed or authorized such act or omission, or failed to adequately supervise or properly control or direct their employees while engaged in the management, direction, operation, or control of the affairs of defendant, and did so while acting within the scope of their duties, employment or agency.

20.     At all times relevant to this litigation, upon information and belief, the Defendant designed, developed, manufactured, marketed and/or sold PFAS containing products throughout the country, including in New Jersey.

21.     3M employs approximately 37,000 people in the United States and has operations in twenty-nine U.S. states, including a 204,000 square foot facility in Flemington, New Jersey, which it has owned and operated since 1996.

22.     At all relevant times, the Defendant developed, manufactured, marketed, distributed, released, trained users of, produced instructional materials for, and/or sold products containing PFAS chemicals, both their precursors and derivatives, throughout the state of New Jersey, which contaminated the Plaintiff's drinking water which he consumed daily.

23.     It was foreseeable to 3M that the PFAS chemicals it sold into New Jersey would contaminate the environment including surface and ground waters of New Jersey.

24.     Plaintiff's unknowing consumption of water contaminated with Defendant's PFAS directly and proximately caused Plaintiff to develop testicular cancer, and to suffer severe personal injuries, pain, suffering, and emotional distress.

**FACTUAL ALLEGATIONS**

**THE PER- AND POLYFLUOROALKYL CHEMICALS:**

25.     PFOS, PFOA, PFNA, PFBS, and PFHxS fall within a class of chemicals known as per- and polyfluoroalkyl substances ("PFAS").

26.     PFAS are non-naturally-occurring, man-made chemicals that were first developed in the late 1930s to 1940s and put into large-scale manufacture and use by the early 1950s.

27.     PFAS are water soluble and can migrate readily from soil to groundwater, where they can be transported long distances.

28.     PFAS are thermally, chemically, and biologically stable and resistant to biodegradation, atmospheric photo-oxidation, direct photolysis, and hydrolysis.

29.     PFAS are readily absorbed in animal and human tissues after oral exposure and accumulate in the serum, kidney, and liver.

30.     PFAS chemicals have been found globally in water, soil, and air as well as in human food supplies, breast milk, umbilical cord blood, and human blood serum.

31.     PFAS chemicals are persistent in the human body. Acute exposure can result in a body burden that persists for years and can increase with additional exposures.

32.     Water that is processed by typical municipal water treatment plants does not result in the removal, filtration or treatment of PFAS.

33.     3M marketed, developed, distributed, sold, manufactured, released, trained users on, produced instructional materials for, and/or otherwise handled and/or used PFAS, including in New Jersey, in such a way as to cause the contamination of Plaintiff's public drinking water source.

34.     Prior to the commercial development and large-scale manufacture and use of PFAS, principally by 3M, no such PFAS had been found, detected, or were present in the environment or Plaintiff's drinking water supplies.

35.     Defendant's manufacturing and/or distributing of PFAS resulted in the release of PFAS into the air, surface waters, ground water, soil and landfills.

36.     Due to its involvement and/or participation in the creation of PFAS chemicals, and its involvement in the creation of instructional materials and labels for such chemicals and/or products containing PFAS, Defendant knew and/or foresaw, or at least reasonably should have known and/or foreseen that PFAS from its products would contaminate the environment, including but not limited to the groundwater relied upon by Plaintiff as its public drinking water supply.

37.     Since they were first produced, information has emerged showing adverse health effects caused by exposure to PFAS chemicals.

38.     According to the United States Environmental Protection Agency ("EPA"), studies indicate that exposure to PFAS chemicals over certain levels may result in developmental effects to fetuses during pregnancy or to breastfed infants (e.g., low birth weight, accelerated puberty, skeletal variations), cancer (e.g., testicular, kidney, bladder), liver effects (e.g., tissue damage), immune effects (e.g., antibody production and immunity), thyroid effects and other effects (e.g., cholesterol changes).

39.     The EPA has also warned that there is suggestive evidence of carcinogenic potential for PFAS chemicals.

40.     On June 15, 2022, the EPA has issued Health Advisory Levels of .004 parts per trillion (ppt) for PFOA; .02 ppt for PFOS; 10 ppt for PFHxS; and 2,000 ppt for PFBS.

41.     Based upon information and belief, there is no safe level of exposure to PFAS chemicals.

42.     On November 1, 2017, the New Jersey Department of Environmental Protection (hereinafter "DEP") announced that it would set a maximum contaminant level ("MCL") for PFOA in drinking water of 14 ppt.

43.     Subsequently, the DEP recommended an MCL for PFOS and PFNA in drinking water of 13 ppt.

44.     In March 2020, New Jersey designated PFOA and PFOS as hazardous substances.

45.     Middlesex Water Company's South Plainfield facility detected the presence of PFOA at levels up to 41 ppt, and PFOS at levels up to 25 ppt, both of which exceed DEP standards.

## DEFENDANT'S KNOWLEDGE

46.     By at least the end of the 1970s, 3M was aware that PFAS had been detected in the blood of workers at its manufacturing facilities, as well as in the blood of the general population of the United States.

47.     3M knew or reasonably should have known that continuing to manufacture and use PFAS materials would inevitably result in continued and increased levels of PFAS released in to the environment, and thus into human blood across the United States, even in areas nowhere near specific PFAS manufacturing or use facilities.

48.     By the early 1980s, Defendant knew, or reasonably should have known that when PFAS or PFAS containing products are released into the environment that the PFAS

component will readily migrate through the subsurface, mix easily with groundwater, resist natural degradation, render drinking water unsafe and/or non-potable, and can be removed from public drinking water supplies only at substantial expense with additional technology and equipment.

49.     On information and belief, by the 1980s, Defendant knew, or reasonably should have known, among other things, that PFAS chemicals were toxic.

50.     Defendant knew or reasonably should have known that PFOA, PFHxS, and PFOS could be absorbed into the lungs and gastrointestinal tract, potentially causing severe damage to the liver, kidneys, and central nervous system, in addition to other toxic effects.

51.     Defendant knew or reasonably should have known that PFAS are carcinogens which cause genetic damage.

52.     Beginning in 1983, Defendant documented a trend of increasing levels of PFOS in the bodies of 3M workers. In an internal memo, Defendant's medical officer warned "we must view this present trend with serious concern. It is certainly possible that … exposure opportunities are providing a potential uptake of fluorochemicals that exceeds excretion capabilities of the body."

53.     By the late 1980s, 3M understood that, not only did PFAS persist and accumulate in the human body, including in human blood, but also that once PFAS is in the human body, it has a long half-life, meaning it would take years before even half of the material would start to be eliminated, assuming there were no additional exposures.

54.     At all relevant times, Defendant, through its actions and/or omissions, controlled, minimized, trivialized, manipulated, and/or otherwise influenced the information that was published in peer-review journals, released by any governmental entity, and/or otherwise made available to the public relating to the risks of PFAS.

9

55.     At all relevant times, Defendant, through its actions and/or omissions, took steps to attack, challenge, discredit, and/or otherwise undermine any scientific findings, studies, statements, and/or other information that proposed, alleged, suggested, or even implied any potential adverse health effects or risks, and/or any other fact of legal, toxicological, or medical significance associated with PFAS.

56.     At all relevant times, Defendant, through its actions and/or omissions, concealed and/or withheld information from its customers, governmental entities, and the public that would have properly and fully alerted Plaintiff about the possible toxicological and other risks from having any PFAS in its drinking water supplies.

57.     At all relevant times, Defendant (by its customers and others) encouraged the continued and/or increased use and release of PFAS into the environment, including into New Jersey and the Middlesex district, through the manufacture, use, and release of PFAS or PFAS-containing products despite knowledge of the toxicity, persistence, and bioaccumulation concerns associated with such activities.

58.     Once governmental entities and regulators began learning of the toxicity, persistence and bioaccumulation concerns associated with PFAS, Defendant cited to the pervasive use of PFAS throughout numerous sectors of the American economy (which 3M had intentionally and purposefully encouraged and created), and the widespread presence of PFAS in blood of Americans (which 3M had also negligently, recklessly, and/or intentionally caused) as a reason not to restrict or regulate PFAS, essentially arguing that the issues associated with PFAS had become "too big to regulate."

59.     Based on information and belief, in 2000, under pressure from the EPA, Defendant announced that it was phasing out PFOS and U.S. production of PFOS, in part due to the chemicals' biopersistence.

60.     Despite the concerns expressed internally within 3M and by regulatory agencies, 3M continued to encourage and promote the use of PFAS and PFAS-containing products in a manner that was likely to pollute the environment.

61.     After 2000, 3M continued to promote a false narrative that PFOS was safe and posed no risk to humans despite internal knowledge to the contrary.

62.     Based on information and belief, 3M's POSF and related chemistries were not fully phased out until 2002.

63.     Notwithstanding the aforementioned knowledge as to the various risk associated with PFAS exposure, Defendant negligently and carelessly designed, manufactured, marketed, distributed, and/or sold PFAS and/or PFAS-containing products.

64.     Defendant negligently and carelessly failed to instruct users on how PFAS and PFAS containing products should be used and disposed of.

65.     Defendant negligently and carelessly failed to warn the users of PFAS chemicals of the dangers of surface water, soil, and groundwater contamination as a result of standard use and disposal of these products.

66.     Defendant negligently and carelessly further failed and refused to issue the appropriate warnings and/or recalls to the users of PFAS chemicals, notwithstanding the fact that Defendant knew foreseeable the identities of the purchasers and end-users of the PFAS chemicals, as well as the final fate of PFAS chemicals in water and the environment, including in humans.

## PETER HLAVKA'S  EXPOSURE TO PFAS

67.     Upon information and belief, Plaintiff received water from Middlesex Water Company, located in Middlesex, New Jersey.

68.     Middlesex Water Company's water is contaminated by Defendant's PFAS chemicals.

69.     Throughout his life, beginning in 1993, Plaintiff regularly and unknowingly ingested Defendant's products containing PFAS and/or its precursor chemicals through the contaminated drinking water supplied by Middlesex Water Company.

70.     At no point while he relied on Middlesex Water Company's water did Plaintiff receive any warning that Defendant's products containing PFAS had contaminated Middlesex' South Plainfield water treatment plant, which supplies Plaintiff's drinking water.

71.     At no point while he utilized and ingested Middlesex Water Company's water did Plaintiff receive any warning that Defendant's PFAS and/or its precursor chemicals were toxic or carcinogenic.

72.     The Defendant knew or should have known of the hazards of PFAS and/or its precursor chemicals when the products were manufactured.

73.     The Defendant knew or should have known of the potential for their product containing PFAS and/or their precursor chemicals to seep into the water table and contaminate the water sources when the products were manufactured.

74.     At no point did Plaintiff receive any warning that the Defendant's PFAS containing products were toxic or carcinogenic, or that these chemicals may contaminate drinking water sources.

75.     On July 10, 2020, after years of drinking water contaminated by the Defendant's PFAS containing product, Plaintiff was diagnosed with testicular cancer, and was made to undergo an orchiectomy to treat his testicular cancer.

76.     On or around December 2021, Plaintiff discovered that his cancer was caused by ingestion of water contaminated by Defendant's PFAS chemicals.

77.     Plaintiff suffered, and continues to suffer, the effects of his testicular cancer, including significant pain, emotional distress, economic damages, and daily fear and concern of his cancer recurring, all of which were proximately caused by exposure to Defendant's PFAS chemicals.

## CAUSES OF ACTION
### COUNT I
### PRODUCTS LIABILITY – DEFECTIVE DESIGN

78.     Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full therein.

79.     At all times relevant to the Complaint, Defendant was regularly engaged in the design, formulation, production, creation, making, construction, assembly, rebuilding, sale, distribution, preparation, and labeling, of PFAS chemicals.

80.     At all times pertinent to this Complaint, Defendant regularly participated in placing the PFAS chemicals into the American stream of commerce.

81.     As a manufacturer, designer, refiner, formulator, distributor, supplier, seller, and/or marketer of PFAS chemicals, the Defendant owed a duty to all persons whom

13

Defendant's products might foreseeably harm not to manufacture, sell, and/or market any product which is unreasonably dangerous for its intended and foreseeable uses.

82.     Defendant's PFAS chemicals were defectively designed and manufactured when the products left the hands of Defendant, such that the foreseeable risks associated with the use, storage, and disposal of the PFAS chemicals exceeded the alleged benefits associated with its design and formulation.

83.     At all times relevant to this litigation, Defendant's PFAS chemicals reached Defendant's  intended consumers and users without substantial change in its condition as designed, manufactured, sold, distributed, labeled, and marketed by Defendant.

84.     As a direct result of PFAS and/or PFAS-containing products being utilized as the Defendant intended, PFAS was released into the environment and seeped into the public water sources in South Plainfield, New Jersey, and were ingested by Plaintiff.

85.     Defendant could have manufactured, marketed, and sold alternative designs or formulations of products that did not contain harmful PFAS chemicals.

86.     These alternative designs and/or formulations were available, practical, and both technologically and economically feasible.

87.     The use of these alternative designs would have reduced or prevented the reasonably foreseeable harm to human health that was caused by the Defendant's manufacture, marketing, and sale of PFAS chemicals.

88.     The PFAS chemicals manufactured, sold, or distributed by the Defendant were defective in design because the foreseeable risk of harm posed by the PFAS chemicals could have been reduced or eliminated by the adoption of a reasonable alternative design.

14

89.     As a direct and proximate result of Defendant's defective design, Plaintiff suffered and will continue to suffer some or all of the following damages:

a.   Medical and hospital bills for diagnosis, monitoring, and treatment of injuries;

b.   Physical injury, both temporary and permanent;

c.   Economic Damages;

d.   Severe and significant emotional distress and mental pain and suffering;

e.   Fear of cancer recurrence;

f.   Humiliation, embarrassment and fear;

g.   Loss of enjoyment of life;

h.   Annoyance and inconvenience; and

i.   Other damages, which, under the law and circumstances, Plaintiff is entitled to recover, including attorneys' fees and costs associated with the prosecution of this action.

90.     As a result of Defendant's design and formulation of a defective product, Defendant is strictly liable in damages to Plaintiff.

91.     Defendant's acts were willful, wanton, reckless and/or conducted with a reckless indifference to the rights of Plaintiff

## COUNT II

## PRODUCTS LIABILITY – FAILURE TO WARN

92.     Plaintiff hereby incorporates by reference all allegations contained in the preceding paragraphs of this Complaint as if restated in full therein.

93.     Defendant, as a manufacturer and seller PFAS had a duty to provide adequate warnings or instructions about the dangers of its product.

94.     Defendant had this duty even if the product was perfectly designed and manufactured.

95.     Defendant knew or should have known that exposure to PFAS chemicals presented a substantial danger when used because it is hazardous to human health and the environment.

96.     Defendant knew or should have known that the manner in which it was manufacturing, marketing, and selling PFAS chemicals would result in physical harm to Plaintiff.

97.     Ordinary consumers of Defendant's PFAS chemicals would not have recognized the risks.

98.     Defendant failed to adequately warn and/or instruct Plaintiff of the potential risks of PFAS chemicals.

99.     Defendant's failure to adequately warn and/or instruct existed before the PFAS containing products left the Defendant's control.

100.    Defendant's warning should have been the kind of warning or instruction which a reasonably prudent manufacturer or seller in the same or similar circumstances would have provided.

101.    The Plaintiff was a reasonably foreseeable person who might reasonably be expected to come in contact with Defendant's PFAS and/or PFAS-containing products.

102.    Had Defendant provided adequate warnings, users of the products would have followed them, and taken measures to avoid or lessen the amount of exposure to PFAS chemicals.

103.    Adequate instructions and warnings on the PFAS chemicals could have reduced or avoided these foreseeable risks of harm to Plaintiff's health.

104.    The lack of sufficient warnings was a substantial factor in causing Plaintiff's harm.

105.    Defendant's failure to warn and/or instruct was a direct and proximate cause of Plaintiff's illnesses alleged above.

106.    Defendant's failure to provide adequate and sufficient warnings for the PFAS chemicals that they manufactured, marketed, and sold renders the PFAS and/or PFAS-containing products defective.

107.    Defendant's acts were willful, wanton, reckless, and/or conducted with a reckless indifference to the rights of Plaintiff.

108.    As a direct and proximate result of Defendant's defective design, Plaintiff has suffered and will continue to suffer some or all of the following damages:

    a.  Medical and hospital bills for diagnosis, monitoring, and treatment of injuries;

    b.  Physical injury, both temporary and permanent;

    c.  Economic Damages;

    d.  Severe and significant emotional distress and mental pain and suffering;

    e.  Fear of cancer recurrence;

    f.  Humiliation, embarrassment and fear;

    g.   Loss of enjoyment of life;

    h.   Annoyance and inconvenience; and

    i.   Other damages, which, under the law and circumstances, Plaintiff is entitled to recover, including attorneys' fees and costs associated with the prosecution of this action.

109.    As a result of Defendant's manufacture, sale, and/or distribution of a defective product, Defendant is strictly liable in damages to Plaintiff.

## COUNT III
### STRICT LIABILITY – DEFECTIVE DESIGN
**(N.J. Products Liability Act – N.J.S.A. 2A:58C-1, *et seq.*)**

110.    Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full therein.

111.    At all times relevant to the Complaint, Defendant was regularly engaged in the design, formulation, production, creation, making, construction, assembly, rebuilding, sale, distribution, preparation, and labeling, of PFAS chemicals.

112.    At all times pertinent to this Complaint, Defendant regularly participated in placing the PFAS chemicals into the American stream of commerce.

113.    At all times relevant hereto, Defendant's PFAS chemicals were manufactured, designed, and labeled in an unsafe, defective, and inherently dangerous condition, and were dangerous for use by the public.

114.    As a manufacturer, designer, refiner, formulator, distributor, supplier, seller, and/or marketer of PFAS chemicals, the Defendant owed a duty to all persons whom Defendant's products might foreseeably harm not to manufacture, sell, and/or market any product which is unreasonably dangerous for its intended and foreseeable uses.

115.    Defendant's PFAS chemicals were defectively designed and manufactured when the products left the hands of Defendant, such that the foreseeable risks associated with the use, storage, and disposal of the PFAS chemicals exceeded the alleged benefits associated with its design and formulation.

116.    At all times relevant to this litigation, Defendant's PFAS chemicals reached Defendant's intended consumers and users without substantial change in its condition as designed, manufactured, sold, distributed, labeled, and marketed by Defendant.

117.    As a direct result of PFAS and/or PFAS-containing products being utilized as the Defendant intended, PFAS was released into the environment and seeped into the public water sources in South Plainfield, New Jersey, and were ingested by Plaintiff.

118.    Defendant could have manufactured, marketed, and sold alternative designs or formulations of products that did not contain harmful PFAS chemicals.

119.    These alternative designs and/or formulations were available, practical, and both technologically and economically feasible.

120.    The use of these alternative designs would have reduced or prevented the reasonably foreseeable harm to human health that was caused by the Defendant's manufacture, marketing, and sale of PFAS chemicals.

121.    The PFAS chemicals manufactured, sold, or distributed by the Defendant were defective in design because the foreseeable risk of harm posed by the PFAS chemicals could have been reduced or eliminated by the adoption of a reasonable alternative design.

122.    Defendant's defective design of PFAS was willful, wanton, fraudulent, malicious, and done with reckless disregard for the health and safety of the people who would be foreseeably exposed to Defendant's products. Defendant's conduct was motivated by greed and

the intentional decision to value profits over the safety and well-being of the public, including the Plaintiff.

123.    As a direct and proximate result of Defendant's defective design, Plaintiff suffered and will continue to suffer some or all of the following damages:

j.    Medical and hospital bills for diagnosis, monitoring, and treatment of injuries;

k.    Physical injury, both temporary and permanent;

l.    Economic Damages;

m.    Severe and significant emotional distress and mental pain and suffering;

n.    Fear of cancer recurrence;

o.    Humiliation, embarrassment and fear;

p.    Loss of enjoyment of life;

q.    Annoyance and inconvenience; and

r.    Other damages, which, under the law and circumstances, Plaintiff is entitled to recover, including attorneys' fees and costs associated with the prosecution of this action.

124.    As a result of Defendant's design and formulation of a defective product, Defendant is strictly liable in damages to Plaintiff.

125.    Defendant's acts were willful, wanton, reckless and/or conducted with a reckless indifference to the rights of Plaintiff

**COUNT IV**
**STRICT LIABILITY – FAILURE TO WARN**
**(N.J. Products Liability Act – N.J.S.A. 2A:58C-1, *et seq.*)**

126.     Plaintiff hereby incorporates by reference all allegations contained in the preceding paragraphs of this Complaint as if restated in full therein.

127.     Defendant engaged in the business of designing, developing, researching, licensing, manufacturing, packaging, labeling, marketing, selling, and/or distributing PFAS, thus, Defendant had a duty to provide adequate warnings or instructions about the dangers of its product.

128.     Defendant had this duty even if the product was perfectly designed and manufactured.

129.     Defendant knew or should have known that exposure to PFAS chemicals presented a substantial danger when used because it is hazardous to human health and the environment.

130.     Defendant knew or should have known that the manner in which it was manufacturing, marketing, and selling PFAS chemicals would result in physical harm to Plaintiff.

131.     Defendant's PFAS chemicals were unreasonably dangerous when they left Defendant's possession and/or control, and it when they were unknowingly ingested by the Plaintiff.

132.     Ordinary consumers of Defendant's PFAS chemicals would not have recognized these risks.

133.     Defendant failed to adequately warn and/or instruct Plaintiff of the potential risks of PFAS chemicals.

134.     Defendant's failure to adequately warn and/or instruct existed before the PFAS containing products left the Defendant's control.

135.   Defendant's warning should have been the kind of warning or instruction which a reasonably prudent manufacturer or seller in the same or similar circumstances would have provided.

136.   The Plaintiff was a reasonably foreseeable person who might reasonably be expected to come in contact with Defendant's PFAS and/or PFAS-containing products.

137.   Had Defendant provided adequate warnings, users of the products would have followed them, and taken measures to avoid or lessen the amount of exposure to PFAS chemicals.

138.   Adequate instructions and warnings on the PFAS chemicals could have reduced or avoided these foreseeable risks of harm to Plaintiff's health.

139.   The lack of sufficient warnings was a substantial factor in causing Plaintiff's harm.

140.   Defendant's failure to warn and/or instruct was a direct and proximate cause of Plaintiff's illnesses alleged above.

141.   Defendant's failure to provide adequate and sufficient warnings for the PFAS chemicals that they manufactured, marketed, and sold renders the PFAS and/or PFAS-containing products defective.

142.   Defendant's acts were willful, wanton, reckless, and/or conducted with a reckless indifference to the rights of Plaintiff.

143.   As a direct and proximate result of Defendant's defective design, Plaintiff has suffered and will continue to suffer some or all of the following damages:

    j.   Medical and hospital bills for diagnosis, monitoring, and treatment of injuries;

22

k.  Physical injury, both temporary and permanent;

l.  Economic Damages;

m.  Severe and significant emotional distress and mental pain and suffering;

n.  Fear of cancer recurrence;

o.  Humiliation, embarrassment and fear;

p.  Loss of enjoyment of life;

q.  Annoyance and inconvenience; and

r.  Other damages, which, under the law and circumstances, Plaintiff is entitled to recover, including attorneys' fees and costs associated with the prosecution of this action.

144.    As a result of Defendant's manufacture, sale, and/or distribution of a defective product, Defendant is strictly liable in damages to Plaintiff.

## COUNT V
## COMMON LAW NEGLIGENT FAILURE TO WARN

145.    Plaintiff hereby incorporates by reference all allegations contained in the preceding paragraphs of this Complaint as if restated in full therein.

146.    As a manufacturer, designer, refiner, formulator, distributor, supplier, seller, and/or marketer of PFAS chemicals, the Defendant owed a duty to Plaintiff to exercise reasonable care in the designing, instructing, labeling, and warning of the handling, control, use and disposal of such chemicals, including a duty of care to ensure that PFAS did not pollute the environment thereby contaminating Plaintiff's public drinking water supply.

147.    As a manufacturer, designer, refiner, formulator, distributor, supplier, seller, and/or marketer of PFAS chemicals, the Defendant owed a duty to Plaintiff to exercise reasonable care in the designing, instructing, labeling, and warning of the handling, control, use

and disposal of such chemicals, including a duty of care to ensure that PFAS did not pollute the environment thereby contaminating Plaintiff's public drinking water supply.

148.     Defendant owed a duty of care towards Plaintiff that was commensurate with the inherently dangerous, harmful, injurious, environmentally-persistent, toxic, and bio-accumulative nature of PFAS chemicals.

149.     Defendant knew, foresaw, anticipated, and/or should have known, foreseen, and/or participated that the design, engineering, manufacture, fabrication, sale, release, training users of, production of informational materials about, handling, use, and/or distribution of PFAS and/or other acts and/or omissions as described in this Complaint could likely result in the contamination of Plaintiff's public drinking water supply and had a duty to warn the Plaintiff of this danger.

150.     Despite knowing, anticipating, and/or foreseeing the bio-persistent, bio-accumulative, toxic, and/or otherwise harmful and/or injurious nature of PFAS, Defendant failed to warn Plaintiff of the dangers associated with PFAS.

151.     Defendant, through its acts and/or omissions as described in this Complaint, breached its duty by failing to warn Plaintiff of the dangers associated with PFAS.

152.     It was reasonably foreseeable to Defendant that Plaintiff would likely suffer the injuries and harm described in this Complaint by virtue of Defendant's breach of its duty to warn.

153.     But for Defendant's negligent failure to warn, Plaintiff would not have been injured or harmed.

154.     Defendant's negligent conduct was the direct and proximate cause of the injuries and harm to the Plaintiff as described herein.

155.     As a direct and proximate result of Defendant's failure to warn of the risks associated with PFAS, Plaintiff has suffered and will continue to suffer some or all of the following damages:

     a.   Medical and hospital bills for diagnosis, monitoring, and treatment of injuries;

     b.   Physical injury, both temporary and permanent;

     c.   Economic Damages;

     d.   Severe and significant emotional distress and mental pain and suffering;

     e.   Fear of cancer recurrence;

     f.   Humiliation, embarrassment and fear;

     g.   Loss of enjoyment of life;

     h.   Annoyance and inconvenience; and

     i.   Other damages, which, under the law and circumstances, Plaintiff is entitled to recover, including attorneys' fees and costs associated with the prosecution of this action.

## COUNT VI
### NEGLIGENCE

156.     Plaintiff hereby incorporates by reference all allegations contained in the preceding paragraphs of this Complaint as if restated in full therein.

157.     As a manufacturer, designer, refiner, formulator, distributor, supplier, seller, and/or marketer of PFAS chemicals, the Defendant owed a duty to Plaintiff to exercise reasonable care in the designing, instructing, labeling, and warning of the handling, control, use and disposal of such chemicals, including a duty of care to ensure that PFAS did not pollute the environment thereby contaminating Plaintiff's public drinking water supply.

158.    Defendant owed a duty of care towards Plaintiff that was commensurate with the inherently dangerous, harmful, injurious, environmentally-persistent, toxic, and bio-accumulative nature of PFAS chemicals.

159.    Defendant failed to exercise ordinary care by acts and/or omissions that permitted, allowed, and/or otherwise resulted in the contamination of Plaintiff's public drinking water supply with PFAS, including all such acts and/or omissions referenced in this Complaint.

160.    Despite knowing that its PFAS chemicals are toxic, can contaminate soil and water resources, and present significant risks to human health and the environment, the Defendant breached its duty of reasonable care when it designed, manufactured, formulated, handled, labeled, instructed, controlled, marketed, promoted, and/or sold PFAS chemicals.

161.    Additionally, the Defendant breached its duty of reasonable care when it issued inadequate instructions on how PFAS chemicals should be used and disposed of.

162.    Defendant further breached its duty of reasonable care when it failed to recall and/or warn the users of PFAS chemicals of the dangers to human health and water contamination as a result of standard use and disposal of these products.

163.    Defendant breached its duty of reasonable care when failed to design surfactants that did not contain PFAS chemicals, or pose a risk of environmental harm or potential adverse health effects.

164.    Finally, Defendant breached its duty of reasonable care when it failed and refused to issue the appropriate warnings and/or recalls to the users of PFAS chemicals regarding the proper use and disposal of these products, notwithstanding the fact that Defendant knew, or could determine with reasonable certainty, the identity of the purchasers of its PFAS chemicals.

165.    Defendant was conscious of the dangers of PFAS chemicals and was conscious that bodily injury to Plaintiff would or was likely to result from the PFAS chemicals and Defendant's negligent acts and/or omissions.

166.    Defendant knew, foresaw, anticipated, and/or should have foreseen, anticipated, and/or known that the design, engineering, manufacture, fabrication, sale, release, training of users of, production of informational materials about, handling, use, and/or distribution of PFAS and/or other acts and/or omissions as described in this Complaint could likely result in the contamination of Plaintiff's public drinking water supply and subsequent physical harm suffered by the Plaintiff.

167.    It was reasonably foreseeable to Defendant that Plaintiff would likely suffer the injuries and harm described in this Complaint by virtue of Defendant's breach of its duty and failure to exercise ordinary care, as described herein.

168.    Defendant knew or reasonably should have known that people reasonably expected to come in contact with Defendant's PFAS chemicals or their derivatives would not realize the danger Defendant's product posed to human health.

169.    A reasonable manufacturer or distributor under the same or similar circumstances would have warned of the danger.

170.    Defendant's failure to act with reasonable care to (1) design a product to perform safely; (2) issue an adequate warning or instruction on the use of products containing PFAS chemicals and; (3) issue a recall, were substantial factors in causing plaintiff's harm.

171.    Defendant's negligent conduct was the direct and proximate cause of the injuries and harm to Plaintiff as described herein.

172.    But for Defendant's negligent acts and/or omissions, Plaintiff would not have been exposed to unhealthy levels of PFAS chemicals, and therefore, would not have been harmed.

173.    Plaintiff is reasonably certain to have future permanent and lasting detrimental health effects due to Plaintiff's present and past injuries directly and proximately caused by Defendant's negligent acts or omissions.

174.    As a direct and proximate result of the Defendant's negligent conduct, Plaintiff has suffered and will continue to suffer the following damages:

> a.  Medical and hospital bills for diagnosis, monitoring, and treatment of injuries;
>
> b.  Physical injury, both temporary and permanent;
>
> c.  Economic Damages;
>
> d.  Severe and significant emotional distress and mental pain and suffering;
>
> e.  Fear of cancer recurrence;
>
> f.  Humiliation, embarrassment and fear;
>
> g.  Loss of enjoyment of life;
>
> h.  Annoyance and inconvenience; and
>
> i.  Other damages, which, under the law and circumstances, Plaintiff is entitled to recover, including attorneys' fees and costs associated with the prosecution of this action.

## COUNT VII
## NEGLIGENT MISREPRESENTATION

175.    Plaintiff hereby incorporates by reference all allegations contained in the preceding paragraphs of this Complaint as if restated in full therein.

176.    For at least several decades, Defendant had knowledge or the means of knowledge that Defendant's PFAS chemicals were causally connected with or could increase the risk of causing damage to humans and animals.

177.    Defendant had a duty of care to disclose to consumers and the public, including the Plaintiff, the actual and potential risks of continuing PFAS exposure and/or ingestion.

178.    Defendant breached this duty by negligently withholding, misrepresenting, and/or concealing information regarding the dangers of Defendant's PFAS products from Plaintiff and the public at large, who had a right to know of information which would have prevented Plaintiff from being exposed and/or continuing to be exposed to Defendant's PFAS products.

179.    Defendant negligently represented to the public and regulatory authorities that PFAS products were safe for the environment and posed no risk of harm to people.

180.    Consumers and end-users of 3M's products in New Jersey reasonably relied upon Defendant's statements in continuing to use these products

181.    As a result of this reliance, PFAS and PFAS products were dispersed into the environment contaminating drinking water supplies throughout New Jersey, including the Plaintiff's.

182.    As a direct and proximate result of the aforesaid acts and/or omissions by Defendant, Plaintiff unknowingly ingested Defendant's PFAS chemicals and developed testicular cancer as a result.

183.    As a direct and proximate result of the Defendant's fraudulent conduct, Plaintiff has suffered and will continue to suffer the following damages:

a. Medical and hospital bills for diagnosis, monitoring, and treatment of injuries;

b. Physical injury, both temporary and permanent;

c. Economic Damages;

d. Severe and significant emotional distress and mental pain and suffering;

e. Fear of cancer recurrence;

f. Humiliation, embarrassment and fear;

g. Loss of enjoyment of life;

h. Annoyance and inconvenience; and

i. Other damages, which, under the law and circumstances, Plaintiff is entitled to recover, including attorneys' fees and costs associated with the prosecution of this action.

## COUNT VIII
### FRAUD

184. Plaintiff hereby incorporates by reference all allegations contained in the preceding paragraphs of this Complaint as if restated in full therein.

185. For at least several decades, Defendant was aware of the bio-accumulative and bio-persistent nature of the PFAS substances it manufactured.

186. Defendant was also aware of PFAS' potentially harmful effects to humans.

187. Despite knowledge of the risk of PFAS substances manufactured, 3M falsely represented to consumers, regulators and the public that its products were safe for the environment and posed no risk of harm to people.

188. Defendant knew this information was false.

30

189.    Defendant knowingly, intentionally, maliciously, and/or willfully failed and/or refused to advise Plaintiff and the public of the dangers and/or health risks posed by Defendant's PFAS chemicals.

190.    Defendant knowingly, intentionally, maliciously, and/or willfully deceived the Plaintiff by alleging Defendant's PFAS chemicals were harmless to human health.

191.    Defendant intended to deceive the public, including the Plaintiff, when it made the aforementioned false representations and withheld information regarding the risks of PFAS exposure and ingestion.

192.    Consumers and end-users of 3M's products in New Jersey reasonably relied upon Defendant's statements in continuing to use these products

193.    As a result of this reliance, PFAS and PFAS products were dispersed into the environment contaminating drinking water supplies throughout New Jersey, including the Plaintiff's.

194.    As a direct and proximate result of the aforesaid acts and/or omissions by Defendant, Plaintiff unknowingly ingested Defendant's PFAS chemicals and developed testicular cancer as a result.

195.    As a direct and proximate result of the Defendant's fraudulent conduct, Plaintiff has suffered and will continue to suffer the following damages:

a.   Medical and hospital bills for diagnosis, monitoring, and treatment of injuries;

b.   Physical injury, both temporary and permanent;

c.   Economic Damages;

d.   Severe and significant emotional distress and mental pain and suffering;

e.  Fear of cancer recurrence;

f.  Humiliation, embarrassment and fear;

g.  Loss of enjoyment of life;

h.  Annoyance and inconvenience; and

i.  Other damages, which, under the law and circumstances, Plaintiff is entitled to recover, including attorneys' fees and costs associated with the prosecution of this action.

## COUNT IX
## GROSS NEGLIGENCE

196.    Plaintiff hereby incorporates by reference all allegations contained in the preceding paragraphs of this Complaint as if restated in full therein.

197.    As a manufacturer, designer, refiner, formulator, distributor, supplier, seller, and/or marketer of PFAS chemicals, the Defendant owed a duty to Plaintiff to exercise reasonable care in the instructing, labeling, and warning of the handling, control, use and disposal of such chemicals, including a duty of care to ensure that PFAS did not pollute the environment thereby contaminating Plaintiff's public drinking water supply.

198.    Defendant owed a duty of care towards Plaintiff that was commensurate with the inherently dangerous, harmful, injurious, environmentally-persistent, toxic, and bio-accumulative nature of PFAS chemicals.

199.    Defendant failed to exercise even the slightest ordinary care or diligence by acts and/or omissions that permitted, allowed, and/or otherwise resulted in the contamination of Plaintiff's public drinking water supply with PFAS, including all such acts and/or omissions referenced in this Complaint.

32

200.    Despite knowing that its PFAS chemicals are toxic, can contaminate soil and water resources, and present significant risks to human health and the environment, the Defendant breached its duty of reasonable care when it designed, manufactured, formulated, handled, labeled, instructed, controlled, marketed, promoted, and/or sold PFAS chemicals.

201.    Additionally, the Defendant breached its duty of reasonable care when it issued inadequate instructions on how PFAS chemicals should be used and disposed of.

202.    Defendant further breached its duty of reasonable care when it failed to recall and/or warn the users of PFAS chemicals of the dangers to human health and water contamination as a result of standard use and disposal of these products.

203.    Finally, Defendant breached its duty of reasonable care when it failed and refused to issue the appropriate warnings and/or recalls to the users of PFAS chemicals regarding the proper use and disposal of these products, notwithstanding the fact that Defendant knew, or could determine with reasonable certainty, the identity of the purchasers of its PFAS chemicals.

204.    Defendant was conscious of the dangers of PFAS chemicals and was conscious that bodily injury to Plaintiff would or was likely to result from the PFAS chemicals and Defendant's negligent acts and/or omissions.

205.    Defendant knew, foresaw, anticipated, and/or should have foreseen, anticipated, and/or known that the design, engineering, manufacture, fabrication, sale, release, training of users of, production of informational materials about, handling, use, and/or distribution of PFAS and/or other acts and/or omissions as described in this Complaint could likely result in the contamination of Plaintiff's public drinking water supply and subsequent physical harm suffered by the Plaintiff.

206.    It was reasonably foreseeable to Defendant that Plaintiff would likely suffer the injuries and harm described in this Complaint by virtue of Defendant's breach of its duty and failure to exercise ordinary diligence, as described herein.

207.    Defendant knew or reasonably should have known that people reasonably expected to come in contact with Defendant's PFAS chemicals or their derivatives would not realize the danger Defendant's product posed to human health.

208.    A reasonable manufacturer or distributor under the same or similar circumstances would have warned of the danger.

209.    Each of the aforementioned acts and/or omissions demonstrates Defendant's lack of scant care and total indifference to the safety of others.

210.    Defendant's failure to act with the slightest reasonable care to (1) design a product to perform safely; (2) issue an adequate warning or instruction on the use of products containing PFAS chemicals and; (3) issue a recall were substantial factors in causing plaintiff's harm.

211.    Defendant's grossly negligent conduct was the direct and proximate cause of the injuries and harm to Plaintiff as described herein.

212.    But for Defendant's grossly negligent acts and/or omissions, Plaintiff would not have been exposed to unhealthy levels of PFAS chemicals, and therefore, would not have been harmed.

213.    Plaintiff is reasonably certain to have future permanent and lasting detrimental health effects due to Plaintiff's present and past injuries directly and proximately caused by Defendant's grossly negligent acts or omissions.

214.     As a direct and proximate result of the Defendant's grossly negligent conduct, Plaintiff has suffered and will continue to suffer the following damages:

    a.  Medical and hospital bills for diagnosis, monitoring, and treatment of injuries;

    b.  Physical injury, both temporary and permanent;

    c.  Economic Damages;

    d.  Severe and significant emotional distress and mental pain and suffering;

    e.  Fear of cancer recurrence;

    f.  Humiliation, embarrassment and fear;

    g.  Loss of enjoyment of life;

    h.  Annoyance and inconvenience; and

    i.  Other damages, which, under the law and circumstances, Plaintiff is entitled to recover, including attorneys' fees and costs associated with the prosecution of this action.

## COUNT X
### TRESPASS AND BATTERY

215.     Plaintiff hereby incorporates by reference all allegations contained in the preceding paragraphs of this Complaint as if restated in full therein.

216.     Defendant has known for several decades that its PFAS chemicals are harmful and toxic to humans and animals, and once ingested, will remain in a person's body for a long time, including through binding to blood and/or tissues.

217.     Despite such knowledge, Defendant continued to use and sell the PFAS chemicals, which caused harmful physical contact with Plaintiff.

218.    Defendant's continued actions with knowledge that such actions will result in harmful physical contact with Plaintiff demonstrate intent and/or reckless indifference by Defendant without regard to the harm it has caused and will cause.

219.    Defendant's intentional acts and/or omissions have resulted in PFAS chemicals in the body of Plaintiff or otherwise unlawful and harmful invasion, contact, and/or presence of PFAS in Plaintiff's body, which interferes with Plaintiff's rightful use and possession of Plaintiff's body.

220.    The PFAS chemicals present in and/or on Plaintiff's body originating from Defendant's PFAS chemicals was at all relevant times hereto, and continues to be, the property of Defendant.

221.    The invasion and presence of the PFAS chemicals in and/or on Plaintiff's body was and continues to be unconsented and without permission or authority from Plaintiff or anyone who could grant such permission or authority.

222.    Defendant's intentional acts and/or omissions were done with the knowledge and/or belief that the invasion, contact, and/or presence of PFAS chemicals onto, and/or into Plaintiff's body were substantially certain to result from those acts and/or omissions.

223.    Harmful contact with Plaintiff's body was the direct and/or indirect result of Defendant's intentional acts and/or omissions.

224.    The presence and continuing presence of the PFAS chemicals in and/or on Plaintiff's body is offensive, unreasonable, and/or harmful and constitutes a continuing and/or permanent trespass and battery.

225.    Defendant's past and continuing trespass and battery upon Plaintiff's body directly and proximately caused and continues to directly and proximately cause damage to Plaintiff in the form of bodily injury, for which Defendant is liable.

## COUNT XII
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

226.    Plaintiff incorporates herein by reference each and every paragraph of this Complaint as though set forth in full in this cause of action.

227.    As a manufacturer, designer, refiner, formulator, distributor, supplier, seller, and/or marketer of PFAS chemicals, the Defendant owed a duty to Plaintiff to exercise reasonable care in the designing, instructing, labeling, and warning of the handling, control, use and disposal of such chemicals, including a duty of care to ensure that PFAS did not pollute the environment thereby contaminating Plaintiff's public drinking water supply.

228.    Defendant owed a duty of care towards Plaintiff that was commensurate with the inherently dangerous, harmful, injurious, environmentally-persistent, toxic, and bio-accumulative nature of PFAS chemicals.

229.    Defendant failed to exercise ordinary care by acts and/or omissions that permitted, allowed, and/or otherwise resulted in the contamination of Plaintiff's public drinking water supply with PFAS, including all such acts and/or omissions referenced in this Complaint.

230.    Specifically, Defendant negligently polluted the environment, despite Defendant knowing for decades that such exposure was causing and would continue to cause harm and/or unacceptable risk of harm to Plaintiff.

231.    Defendant's negligently withheld and concealed material information from the Plaintiff that the PFAS chemicals were not harmful and would not cause risk of harm and/or continuing to withhold and/or conceal from Plaintiff material information on such issues,

despite the fact Defendant knew or should have known that the PFAS chemicals were causing and would continue to cause harm and/or risk of harm.

232.    At the time of Defendant's negligent acts and/or omissions, it was foreseeable to Defendant, and Defendant was certain and/or substantially certain that its actions and/or omissions would cause emotional distress to Plaintiff.

233.    Defendant's acts and/or omissions resulting in Defendant's concealment and/or misrepresentations, directly and proximately caused physical harm, and continue to cause physical harm, to Plaintiff.

234.    Defendant's act and/or omissions directly and proximately caused Plaintiff to suffer severe emotional distress.

235.    Defendant's negligent actions were a substantial factor in causing Plaintiff's severe physical, mental, and emotional distress.

## COUNT XII
## INTENTIONAL AND RECKLESS INFLICTION OF EMOTIONAL DISTRESS

236.    Plaintiff hereby incorporates by reference all allegations contained in the preceding paragraphs of this Complaint as if restated in full therein.

237.    Defendant's acts and/or omissions were intentional, and/or reckless, including Defendant's continued pollution of the environment and resultant exposure of harmful PFAS chemicals to the Plaintiff, despite Defendant knowing for decades that such exposure was causing and would continue to cause harm and/or unacceptable risk of harm to Plaintiff.

238.    Defendant knowingly and/or intentionally withheld and concealed material information from and/or affirmatively misrepresented to Plaintiff that he was not exposed to harmful PFAS chemicals and/or that the PFAS chemicals were not causing or creating any risk of harm to him, despite knowing at the time these concealments and/or misrepresentations were made

that the PFAS chemicals were causing and would continue to cause harm and/or unacceptable risk of harm to persons, including Plaintiff.

239.    At the time of Defendant's knowing, and/or intentional acts and/or omissions, it was foreseeable to Defendant and Defendant was certain and/or substantially certain that its actions and/or omissions would cause emotional distress to Plaintiff.

240.    Defendant's acts and/or omissions were extreme, outrageous, intolerable, and/or offended the generally accepted standards of decency and morality.

241.    By continuing to expose Plaintiff to harmful PFAS chemicals, and continuing to misrepresent to Plaintiff that the PFAS chemicals were not harmful and would not cause risk of harm and/or continuing to withhold and/or conceal from Plaintiff material information on such issues, despite knowing that the PFAS chemicals were causing and would continue to cause harm and/or risk of harm, Defendant acted in an extreme, outrageous, and intolerable manner which offended any generally accepted standard of decency and morality.

242.    Defendant's acts and/or omissions resulting in Defendant's concealment and/or misrepresentations, directly and proximately caused physical harm, and continue to cause physical harm, to Plaintiff.

243.    Defendant's acts and/or omissions resulting in Defendant's concealment and/or misrepresentations, directly and proximately caused great emotional suffering, and continue to cause emotional suffering and distress, to Plaintiff, particularly by causing a constant fear of cancer recurrence.

244.    Defendant's extreme, outrageous and intolerable actions were a substantial factor in causing Plaintiff to suffer severe physical, mental, and emotional distress.

245.     As a direct and proximate result of Defendant's extreme, outrageous and intolerable actions, Plaintiff has and will continue to suffer severe physical, mental, and emotional distress.

246.     No reasonable person could be expected to endure the mental anguish caused by the knowledge that entities have knowingly, and/or intentionally exposed them to years of harmful contact with PFAS and/or their precursor chemicals, and has furthermore actively misrepresented and/or concealed such danger from them, while reaping hundreds of millions of dollars in profits as a direct and proximate result.

### CLAIM FOR PUNITIVE DAMAGES AND RESTITUION
**(Under New Jersey Common Law and Statutes)**
**(N.J. Punitive Damages Act – N.J.S.A. 2A:15,** *et seq.***)**
**(N.J. Products Liability Act – N.J.S.A. 2A:58C-1,** *et seq.***)**

247.     Plaintiff hereby incorporates by reference all allegations contained in the preceding paragraphs of this Complaint as if restated in full therein.

248.     At all times relevant to the present cause of action, Defendant manufactured, marketed, and sold the PFAS chemicals that contaminated Plaintiff's drinking water and caused the physical bodily injuries that Plaintiff has suffered and will continue to suffer from.

249.     Punitive damages are applicable under both the common law and the statutory law of New Jersey.

250.     Plaintiff is entitled to punitive damages because Defendant engaged in willful, wanton, malicious, fraudulent and/or reckless conduct, which includes, but is not limited to:

a.   Willfully withholding, misrepresenting, and/or concealing information for decades regarding the environmental impacts and risk of physical harm resulting from PFAS exposure and ingestion.

b. Willfully withholding, misrepresenting, and/or concealing information for decades regarding PFAS release and exposure from Plaintiff, other exposed individuals, and the public at large with the intention to mislead and/or defraud them into believing that their exposure to PFAS chemicals was not harmful, and to mislead and/or defraud them into continuing to purchase and consume drinking water contaminated with PFAS chemicals.

c. Failing to issue a warning, and failing to divulge material information concerning the release of PFAS chemicals;

d. Failing to take all reasonable measures to ensure PFAS chemicals would be used effectively and properly disposed of;

e. Failing to prevent the foreseeable impacts of PFAS exposure upon the Plaintiff;

251. At the time the above-described, affirmative, voluntary, and intentional acts were performed by Defendant, Defendant had good reason to know or expect that its PFAS chemicals, and/or its precursors, were toxic and capable of causing harm to human health.

252. Rather than disclose this information to the public, or provide warnings and/or instructions on its products that address this information, Defendant concealed the risks of PFAS and actively represented that PFAS did not present a risk of harm to the environment or human health.

253. Rather than recall or discontinue PFAS chemicals, Defendant continued to manufacture, sell, market, distribute, design, formulate and/or supply PFAS chemicals for years after learning of the significant risks to the environment and human health.

41

254.    Defendant's failure to disclose the information regarding the risks of PFAS and/or it precursors and its failure to provide adequate warnings and/or instructions as to these risks demonstrate Defendant's reckless disregard for the safety and welfare of the public, including the Plaintiff.

255.    As a proximate and foreseeable consequence of Defendant's negligent, reckless, willful, fraudulent, and/or wanton actions and/or intentional failures to act, Plaintiff ingested unreasonably dangerous, toxic, PFAS-contaminated water which caused him to suffer testicular cancer.

256.    As a result of Defendant's conduct, Plaintiff has been forced to incur and will continue to incur significant costs related to the harm caused by Defendant's PFAS chemicals and will continue to suffer serious and severe physical, mental, and emotional distress as alleged above caused by Defendant's PFAS chemicals.

257.    Defendant has demonstrated a willful, wanton, and/or outrageous conscious disregard for the physical safety of Plaintiff warranting the imposition of punitive damages. The Court should award the Plaintiff punitive damages in an amount sufficient to deter and punish such conduct.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiff demands judgment against Defendant and requests the following relief from the Court:

A.    Compensatory damages to Plaintiff for past and future damages, including but not limited to pain and suffering for severe and permanent personal injuries sustained by the Plaintiff, health care costs, medical monitoring, together with interest and costs as provided by law;

B.      Economic damages to Plaintiff, including but not limited to,  lost wages and costs

        incurred for past and future medical treatment.

C.      Punitive damages that in an amount sufficient to punish Defendant and deter

        future similar conduct;

D.      Reasonable fees for Plaintiff's attorneys;


E.      Any other and further relief as the Court deems just, proper and equitable.



*RESPECTFULLY SUBMITTED,*


    s/s Scott D. Levensten

**SCOTT D. LEVENSTEN, ESQ.**
N.J. I.D. No. 05322013
D.N.J. I.D. No. SL6627
2200 Renaissance Blvd.
Suite 320
King of Prussia Pa, 19406
Ph: (215) 545-5600
Fax: (215) 545-5156
sdl@levenstenlawfirm.com

*Attorney for Plaintiff*

## <u>DEMAND FOR JURY TRIAL</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands trial by jury as to all issues.

Dated:   __June 30, 2022_____            *RESPECTFULLY SUBMITTED,*


__s/s Scott D. Levensten_____
**SCOTT D. LEVENSTEN, ESQ.**
N.J. I.D. No. 05322013
D.N.J. I.D. No. SL6627
2200 Renaissance Blvd.
Suite 320
King of Prussia Pa, 19406
Ph: (215) 545-5600
Fax: (215) 545-5156
sdl@levenstenlawfirm.com

*Attorney for Plaintiff*

44